## In re CHRETIEN.

### Patent Appeal No. 3189.

Court of Customs and Patent Appeals.
Feb. 5, 1934.

Richard Eyre (of Bartlett, Eyre, Scott & Keel), of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

All of appellant's claims for a patent, being claims numbered 1, 2, 6, 7, 8, 9, 10, and 11, were rejected by the examiner. The examiner's action was affirmed by the Board of Appeals of the United States Patent Office, and from the decision of the board appeal is taken to this court.

Claims 1, 6, and 9 are regarded as illustrative, and follow:

"1. A motion picture film having thereon in juxtaposition a series of pictures and a sound record, the pictures being optically compressed laterally to include views which upon projection and restoration are unreduced."

"6. The method of recording and reproducing combined moving picture scenes and sounds which includes forming upon a film a sound record and in juxtaposition thereto a series of pictures which are optically compressed laterally and then projecting and optically restoring the pictures in conjunction with the reproduction of the sound."

"9. The improvement in the art of projected sound pictures which comprises first determining what portion of the available width of the film shall be devoted to the sound track, taking a picture while optically compressing it laterally to bring it within the space of the remaining portion of such available width, imposing the sound track upon said predetermined portion, and projecting said picture with optical restoration to its normal proportions while simultaneously reproducing the sound, whereby satisfactory uniformity and quality of sound reproduction may be obtained without sacrifice of size of projected picture."

The references relied upon are:

Zollinger, 1,032,172, July 9, 1912.

Ries, 1,473,976, November 13, 1923.

The application covers a combined motion picture and sound film and the method of producing the same, together with the manner of projecting the picture and sound from such film. The film has the usual perforations at the side which fit over the feed sprockets of the projector. By his method of making the picture, applicant is enabled to place upon a film of standard width a sound record space wider than is found on the ordinary film.

Appellant states that sound records have been imperfect by reason of the narrow space in which the sound waves were recorded, and that the problem of providing a wider space for the sound film, without increasing the width of the film or decreasing the size of the picture when projected, had confronted the art from the beginning, and that such problem had not been solved until the herein claimed invention was brought forward.

Appellant's solution of the problem is to compress the picture in lateral direction, leaving the film to occupy its usual space in relation to the length. This narrowing the width of the picture is brought about by us-

ing a suitable lens combination associated with the camera. The projecting apparatus which projects such a film is required to have a projecting apparatus so arranged with suitable lenses as to widen the picture on the screen, and, in this manner, the picture is restored to the usual dimensions. Appellant refers to the narrowing of the picture on the film, and the process of widening on the screen by the use of suitable lenses, as involving the principle of anamorphosis. The applicant speaks of the distorting lens as a local anamorphoser.

Appellant points out that in the moving picture art the films have been standardized in size, and that it is impracticable to enlarge the film for the purpose of enlarging the sound recording space, since to do so would be not only to incur additional cost of the film, but to occasion enormous expense in supplying new cameras, projectors, and other equipment for making and handling the films. Owing to the development of the sound feature of films after the picture portion thereof had been highly developed, the problem of inserting on the picture film the necessary sound waves was a very serious problem.

With his method, appellant claims that he not only can keep the width of the picture the same while increasing the sound space, but that he can increase the horizontal field greater than is shown in the prior art, without increasing the length of the film.

Claims 1, 2, and 6, covering pictures on the films which are optically compressed laterally, were rejected upon Zollinger. Concerning claims 7, 8, and 9, the board said that they were indefinite as to size of the sound track and were regarded as reading on a conventional sound track when placed on one of Zollinger's films, or upon figure 4 of Ries, taken with his implication that the pictures are of diminished size. Claims 10 and 11, which specify, respectively, a sound track of the width greater than one tenth of an inch, or of the order of magnitude of one-fourth of an inch, were regarded as more definite than the other claims; but the board concluded that patentability was not involved in mere dimensions, even though those dimensions were definite. Claims 6 and 9 are in the form of method claims, and include the steps of preparing and using the film. The board concluded that there was no patentable distinction between the subject-matter stated in the terms or steps of the method involved and the features of the film. The board also concluded that the method claims were re-

garded as being without patentable merit in view of the prior art.

Zollinger relates to a process of reducing the size of silent pictures and of projecting such pictures in their normal proportions. It is done by deforming the picture in recording it by an optical system including cylindrical lenses. The picture may be reduced either in height or width. In the patent we find the following: "These pictures thus deformed when developed and the positives made therefrom, will be projected by employing the same or a like deformer, said deformer added to the objective of the projecting apparatus, thus producing an inverse and equal deformation to the original one, and consequently obtaining on the screen projected pictures of the normal size and undeformed."

So, it is seen that the principle of anamorphosis which is one of the features of appellant's invention is old in the art of preparing films of a certain kind and in projecting a picture therefrom.

Ries relates to a sound recording method. He discusses the problem of securing a wider sound track. One method shown in figure 5 is the use of a wider film. Another method was to extend the margin of the standard film and provide a space outside the perforations on each side of the film for the sound track. Another method of placing the sound track on a standard film was to cause the perforations to be placed closer to the edge and occupy less space than prevailed in the regular picture film. Ries states that by his methods he may accomplish his purposes "without diminution of the size of the picture."

Appellant urges here that he has done what both inventors in the references failed to accomplish. He further contends that the Zollinger patent was an impracticable scheme for cheapening the cost of silent pictures, and was not only not instructive but was misleading; that Zollinger taught the use of the ordinary deformer, and that this was "false teaching," and "could not be used practically for motion picture work"; and that prior to the applicant, the anamorphoser had not been used for motion pictures.

The Patent Office concedes that appellant's contribution to the art is of great value and may be regarded as an improvement.

Appellant submitted to the Patent Office a number of affidavits signed by motion picture engineers and experts of the highest repute. In these affidavits is set out the problem which Henri Chretien, the applicant, con-

fronted, and they state therein that he solved the problem after all others had failed.

The position of the Board of Appeals is to the effect that since Zollinger disclosed substantially the same method of applicant in narrowing the width of the picture when it is taken and in restoring the width when it is projected, and since Ries has pointed out the problem of having a wider space on the film for the sound wave and has suggested a means of reducing the size of the picture in order to provide such space, that there was nothing left to do in solving the problem appellant solved except that which was within mechanical skill, and that it was largely a matter of degree in the selection of the width of the sound track.

We are constrained to disagree with the board in its conclusion that appellant's application does not disclose the exercise of inventive genius. Certainly there is such substantial doubt on the question that the applicant should have been given the benefit of such doubt. The affidavits of Herbert C. McKay, Joseph Bethenod, and Charles Fabry point out the state of the prior art and the benefits and advantages, as well as the novelty, of appellant's invention. These affiants, obviously, are high authority on this subject. They have used very strong language in pointing out the lack of advantage to the art of the inventions of Zollinger and Ries. They call attention to the fact that the Zollinger patent, which related to silent pictures, never suggested the making of or necessity for a sound space of any width; that Ries was not concerned in making a wider sound track than was ordinarily used, but was concerned only in finding a place on the film for a sound track which he did by laterally compressing the picture.

Professor McKay states that the patent to Ries indicates approximately the art prior to the invention of the applicant. This eminent authority further states: "In my opinion the Chretien idea of providing a sound film of this kind is by no means an obvious thought in view of the Ries and Zollinger patents. I may say that I have given considerable thought and study to the very problem of sound films and have for a long time appreciated the desirability of wider track and that I have also seen demonstrations of optical compression and restoration of pictures, but notwithstanding this the Chretien solution of the problem did not occur to me. I may say also that the scheme of the Zollinger patent of using optical compression to double the number of pictures on a film or to reduce the width of the film has never gone into commercial use."

In our judgment, appellant has invented something for which he should be rewarded. We think claim 9 states the invention in such form as to be allowable. It will be noted that claim 9 was rejected by the board on the grounds that it was indefinite as to the size of the sound track and that it read in terms on a conventional sound track placed upon Zollinger's first species of film. Claim 9 was further rejected upon the ground that there was no patentable distinction between the subject-matter stated in terms of the method involved and the film which applicant produced.

We do not think claim 9 objectionable on the ground of being indefinite as to size of the sound track, and we can see a material distinction between the film and the method set out in claim 9. It must be remembered that the article which is claimed here is a film and is not the instrumentality, including the lenses, with which the method is performed. Appellant's invention did not rest in the exact size of the sound track, but in the making of a film, of standard size, which had a wider sound track than was possible to make under the prior art without interfering with other desirable qualities of the film, and also in projecting the image on such film so as to preserve the proper proportions and qualities of the picture.

Claim 1 is too broad and reads directly upon Ries. It is thought that all that is inventive over the prior art, which is stated in the rejected claims, is found in claim 9. The board's rejection of claims 1, 2, 6, 7, 8, 10, and 11 is affirmed. Its decision as to claim 9 is reversed.

Modified.

GRAHAM, Presiding Judge (dissenting).

I find myself unable to agree with the majority opinion in this case. It seems to me that claim 9 is not allowable, in view of the prior art as shown by the references Zollinger and Ries.

Said claim 9 is very broad. It includes four elements, as follows: First. Determining what portion of the available width of the film shall be devoted to the sound track. Second. Taking a picture while optically compressing it laterally to bring it within the space of the remaining portion of such available width. Third. Imposing the sound track upon said predetermined portion. Fourth. Projecting said picture with optical

restoration to its normal proportions while simultaneously reproducing the sound.

Each and every one of these elements is fully shown by the cited art.

Ries plainly teaches the desirability of additional space for a sound record, and teaches that it is known to the art that more space can be obtained by reducing the size of the picture. In his specification, he recites: "This embodiment permits the use of the existing standard size of motion-picture films *without diminution of the size of the pictures."* (Italics ours.)

It is true that in his suggested plans, he did so by a widening of the film, or by a double sound track upon a standard width film. However, the recognition is present that more space may be obtained by a decrease in the width of the picture.

Zollinger describes a method by which the pictures upon the film may be reduced either in height or width. This is done by a deformer, and in the projection of the same the pictures are restored to their normal size by use of a like deformer. This constitutes "optically compressing it laterally" and "projecting said picture with optical restoration to its normal proportions."

There is no particular apparatus described in claim 9 which differs from that of Zollinger. Therefore, there is nothing which distinguishes one from the other, in this respect.

It seems very obvious to me that with the disclosures of these two patents before him, one skilled in the art would have no difficulty in practicing the method detailed by appellant in claim 9. Much stress is laid, in the opinion of the majority, upon the affidavits in the record. These affidavits are silent as to the matter of commercial success, and at best are simply the expressions of the affiants that the appellant has made an invention. They have little, if any, weight in the consideration of the question of patentability which is here suggested to the court.

The Board of Appeals held that this claim was indefinite as to the size of the sound track. This is true. As the claim is drawn, it will apply to any method which includes making the sound track of any width desired, which, of course, would include a sound track of the width already known to, and practiced by, those engaged in this art.

I am of opinion the tribunals of the Patent Office arrived at the proper conclusion, and that claim 9 should not be allowed.

GARRETT, Associate Judge, concurs in the dissenting opinion.